THOMAS J. CLEMENT et al.

*v.*

YOUNG-MCSHEA AMUSEMENT COMPANY et al.

[Decided April 5th, 1905.]

1. Where an officer of a corporation has managed its affairs, his authority to represent it may be implied from the manner in which he has been permitted by the corporation's directors to transact its business, and may be shown by the exercise of previous acts with others with the permission of the corporation.

2. Y., who owned more than nineteen-twentieths of the stock of an amusement corporation, and was one of its directors, treated the enterprise substantially as his own, made most of the leases in his own name, collected the rents and acted as general manager, with full powers, without any interference by the other officers of the company, rendering them general statements each year of the amounts collected and disbursed by him. He negotiated with complainants for a lease of corporate property for a reasonable term, under which they were required to invest a large sum in preparing the property for use, and, with knowledge of such occupancy, treasurers of the corporation were permitted to collect rents and apply them to the benefit of the corporation. —*Held*, that such facts were sufficient to establish a ratification of the lease by the corporation, and that complainants were entitled to enjoin the further prosecution of an ejectment suit by the corporation to recover possession of the property.

3. Where the negotiations for a lease of property belonging to a corporation were carried on by one of its officers, and he executed a lease to complainants for a term of years in his own name, such lease, though ineffective as a lease against the corporation, was a sufficient memorandum of the agreement to satisfy the statute of frauds, and the complainants are entitled to a similar lease from the corporation for the premises.

On bill for injunction.

*Mr. Howard Carrow,* for the complainants.

*Messrs. Thompson & Cole,* for the defendants.

BERGEN, V. C.

May 1st, 1902, John L. Young executed a lease to the complainant Mary J. Clement for a small room situate on the south

of the entrance to what is called "Young's Hotel," in Atlantic City. The period covered by the lease was ten years, from July 1st, 1902, at an annual rent of $1,000. The tenant entered into possession and has complied with all of the conditions of the lease assumed by her, in strict accordance with their terms. In order to put the property to the use for which it was rented, the complainant expended in machinery and fixtures over $8,000, the value of which will be practically destroyed if the defendant corporation succeeds in its effort to dispossess her, because it was manufactured with reference to the size and shape of the leased building and could not be put to use elsewhere. The premises are part of a business venture, originally of John L. Young, which includes a large ocean pier of extensive proportions, devoted to public amusements, known and advertised as "Young's Pier," the portion of "Young's Hotel" occupied by the complainants being nearly if not quite opposite the entrance to the pier.

The property, previous to the execution of the lease, had been conveyed by Young, the former owner, to "The Young-McShea Amusement Company," but the management and control thereof continued to be exercised by Young, and it was with him, without notice of the corporate ownership, that the defendants negotiated. When the terms had been agreed upon, a writing in the form of a lease, executed by John L. Young of the one part and Mary J. Clement of the other part, was delivered to the complainant by Mr. Shackelford, the son-in-law and general manager for Young. Under this lease the complainants entered into possession, expended the large sum of money above mentioned in fitting up the property, and for two years paid the rent to Mr. Young or Mr. Shackelford, treasurers of the company, when an ejectment suit was commenced by the amusement company to recover from the complainants the possession of the property. Since the bringing of this ejectment suit the complainants have remained in possession of the property, paying rent for the period since elapsed, to the amount of $1,000, to the treasurer of the plaintiff in ejectment.

The capital stock of the defendant company is divided into fifteen hundred shares, all of which, with the exception of sixty-

one shares, at the time of the making of this lease, were and still are owned by Young, who, at the time of the execution of this lease, was the treasurer, and acted as the manager in control of all of the property, making leases with other tenants in his own name as lessor, precisely as the lease with complainants was executed. While the negotiations were conducted and concluded with Mr. Young, the signature to the lease was written by Mr. Shackelford; but in view of the fact that Mr. Young, who concluded the negotiation, afterward accepted the rent, with knowledge of the lease, he will be held to have authorized his signature. The amusement company, desiring to obtain possession of the demised premises, commenced a suit in ejectment against the complainants in the supreme court of this state on the 19th day of July, 1904, based upon the ground that Young, not having the legal title, was unable lawfully to let the premises. To restrain this suit and compel the amusement company to execute a proper lease according to the terms agreed upon between the complainants and Young as its agent, the bill in this cause was filed. All of the rent, now amounting to $6,000, was received by the respective treasurers of the company and used for the benefit of the amusement company. While the complainants were making their expenditures, and after they had opened business, they were visited at different times by nearly all of the officers of the company, the president being one, who saw complainants in possession, and had actual knowledge of the character of the business they were carrying on and the improvements made. The defendants now insist that Mr. Young had no authority from the company to make this lease, and that their standing by while the complainants were acting under their agreement with Young, and permitting Young to collect during 1902 as treasurer—and Shackelford since then as treasurer—the rents, and apply them for the benefit of the company, cannot amount to a ratification, because the officers of the company, other than Young and Shackelford, had no knowledge of the character of the lease, and consequently could not be held to have intended a ratification. They also claim that if Mr. Young was acting as the agent of the company when the lease was made, he did so without written authority, and therefore his act con-

travenes the statute of frauds on this subject. It is beyond question that the officers of the company knew that the complainants were in possession as tenants, and it was within their power to ascertain the character of their holding, as the written evidence of it was in the hands of one of its officers, and they should be charged with notice of every fact which a reasonable inquiry would have put them in possession of. "Presumptions which, by the general rule of evidence, are continually made in cases of private persons, of acts even of the most solemn nature, when those are the natural result or necessary accompaniment of other circumstances, are equally applicable to corporations. Grants and proceedings beneficial to the corporation are presumed to be accepted, and slight acts on their part, which can be reasonably accounted for only upon the supposition of such acceptance, are admitted as presumptions of the fact. If officers of a corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful and the delegated authority will be presumed." *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Keokuk, &c., Bridge Co., 131 U. S. 371, 382.*

The treasurer and person authorized to receive the same accepted from the complainants rent for the leased premises and applied them to the benefit of the company for nearly three years of the term granted. Being officers of the company, acting in this particular, in the line of their duty, the presumption is that they communicated to their superior officers the fact that they were accepting the rent under this lease and applying it to the use of the company. The facts, briefly stated, show that Mr. Young, being practically the owner of the company and one of its directors, treated the enterprise substantially as his own, making most of the leases in his own name, collecting the rents, and acting as general manager with full powers without any interference by the other officers of the company, rendering them general statements each year of the amount collected and disbursed by him. Under these conditions he negotiated with these complainants for a lease for a term of years, not unreasonable

as to time, in view of the fact that the lessee would be required to invest a large sum of money in the preparation of the property for use. With knowledge of this occupancy, Mr. Young and Mr. Shackelford, as treasurers, were permitted to collect the rents and to apply them to the benefit of the corporation, and now, without offering to return to the complainants the benefits which the company have received from this contract, it seeks to avoid it, notwithstanding the fact that it has been paid, and accepted through its treasurer, $1,000 on account of the rent reserved since it denied its validity, and with knowledge of the contents commenced the ejectment suit, for it is not pretended that its officers did not know, when they brought their suit at law, that the complainants claimed possession under this lease, and that they had knowledge of its contents. In my judgment, the acceptance of the rent after the existence of this lease was known to its officers amounts to a ratification of the act of Mr. Young, its treasurer and manager. That the management and control of the property and business was committed to Mr. Young is properly to be inferred from the facts shown in the case. The evidence discloses that in most instances leases for other portions of this property were executed by Mr. Young in his own name as lessor, and that the rents in all instances went to the benefit of the company. He was permitted to conduct the business of the company in the way he did, holding himself out as authorized to act as he did, without any protest from the other officers of the company, whose interests in the corporation were little more than nominal. The representatives of this company had no right to stand by and permit its officers to deal with innocent third persons as if he had full authority without a single remonstrance, and now, when the company desires to be rid of this lease, cannot be allowed to excuse the supineness of its officers by asserting want of authority in Mr. Young, who for all practical purposes, he being the principal owner, is pleading his own want of power to make a contract the benefit of which he and his company have unhesitatingly accepted. It is a well-settled rule that if a corporation ratifies an act performed by an agent on its behalf, such act will be treated as the act of the company, although the agent may have had no authority to bind

it; and where the directors of a corporation, having notice of an unauthorized act, performed on their behalf by one of their officers, remain silent and take no steps to disaffirm the act, they may generally be charged with the consequences of such act on account of their acquiescence or ratification; nor have they the right to await the result and, if profitable to them, insist on its validity, or, if unfavorable, reject it. In the case we are considering all the equities rest with the complainants; they acted in good faith, and were led, by the conduct of the persons who now complain, to rely upon the method in which they permitted their business to be conducted, a method which justified them in believing that they were dealing with the real owner of the property, and these defendants, having received the benefits of the contract and acquiesced in it for so long a time, ought now to be estopped from denying its validity.

The authority of an officer may be inferred from the general manner in which, for a period sufficiently long to establish a course of business, he has been permitted, without interference, to conduct the affairs of the corporation. It may be inferred from his conduct of the business of the corporation allowed by its directors, and that which the directors ought by proper diligence to have known as to the general course of the conduct of their business, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers. *Martin* v. *Webb, 110 U. S. 7.*

It has been held in this state that where an officer has been allowed to manage the affairs of a corporation, his authority to represent it may be implied from the manner in which he has been permitted by the directors to transact its business, and that the powers of an agent may be proved by the exercise of previous acts with other persons with the permission of his principal. *Fifth Ward Savings Bank* v. *First National Bank, 48 N. J. Law (19 Vr.) 513, 527; Blake* v. *Domestic Manufacturing Co., 64 N. J. Eq. (19 Dick.) 480, 495.*

I am entirely satisfied from the evidence in this cause that practically the entire management and control of this property and business was committed by its officers to Mr. Young. It was

practically his property, and he managed it in his own way, holding himself out to the public as its owner, and that all of these acts were submitted to by the officers he had selected to represent the company, with full knowledge of what he was doing, without protest or interference.

I have considered the question presented by the defendants, which they claim arises under the statute of frauds, but, in my judgment, they are not entitled to the benefit of that statute. The negotiations were carried on by an officer of the company, and if the paper which he executed is not effective as a lease, it is a written recital of the result of the negotiations for a lease, based upon which the complainant Mary J. Clement entered into possession of the property and has partly performed her agreement by the payment of rent, besides incurring great expense in improving the property, and where negotiations have been conducted by parol, even as to agreements within the statute of frauds, and such agreement has been partly executed, specific performance will be decreed. *Wharton* v. *Stoutenburgh, 35 N. J. Eq. (8 Stew.) 266.*

Having permitted the complainants to enter under an agreement made with its agent, and accepted payment of the rent agreed upon, it would be inequitable to now allow the defendants to shield themselves behind an informality in the execution of a lease both parties have acted under and compel the complainants to suffer the loss of their investment of $8,000 incurred in fitting up the property for the uses contemplated by the lease or the agreement for a lease.

The result which I have reached is that the complainants are entitled to an injunction restraining the action in ejectment, and that the complainant Mary J. Clement is entitled to have the agreement or lease which was contracted for executed by the defendant corporation, for whom its treasurer, Mr. Young, was acting, under which she entered into possession and which she has partly performed, and I will advise accordingly.